```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
  SYLVIA FRANCIS,                                           :
                                                            :
                                                            :   MEMORANDUM DECISION AND
                          Plaintiff,                        :   ORDER
                                                            :
           - against -                                      :   20-cv-4619 (BMC)
                                                            :
                                                            :
  COMMISSIONER OF SOCIAL SECURITY,                          :
                                                            :
                                                            :
                          Defendant.                        :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that she is not "disabled" as defined in the Social Security Act and its regulations for the purpose of receiving disability insurance benefits under Title II of the Act. Plaintiff suffered a fall at work that caused her injuries. She continued to work after her fall and resultant surgery for about two years, but then filed an application for disability benefits with an onset date of January 20, 2017.

The ALJ found that plaintiff had severe impairments of a herniated and bulging disc in her neck post-surgery; arthritis in her right shoulder post-surgery; carpal tunnel syndrome post-surgery; and obesity. Notwithstanding these impairments, the ALJ found plaintiff capable of performing sedentary work subject to the following limitations: frequently (as opposed to constantly) reach, handle, finger, and feel with the bilateral upper extremities; climb ramps and stairs frequently; stoop occasionally; never climb ladders, ropes, or scaffolds; and never work at unprotected heights or with moving mechanical parts. Because a vocational expert testified that

there were sedentary jobs in the national economy that plaintiff could perform with these limitations, the ALJ found her not disabled.

Plaintiff raises two points of error: (1) the ALJ should have found that plaintiff's anxiety and depression constituted an additional severe impairment, or, at least, she should have "considered and discussed" plaintiff's anxiety and depression even if it wasn't severe; and (2) in assessing plaintiff's residual functional capacity, the ALJ failed to consider the side effects of plaintiff's taking Percocet. Each of these points is discussed below.

**I.   Plaintiff's anxiety and depression as a severe impairment**

Plaintiff's argument that the ALJ should have classified her anxiety and depression as "severe" at step two of the five-step sequential analysis is based on two sources: (1) a report submitted by Dr. John Menaker, a psychologist who examined plaintiff for the purpose of evaluating her; and (2) her own testimony and self-reporting, both to Dr. Menaker and her orthopedists, that her physical injury was making her anxious and depressed.

Dr. Menaker's brief report, most of which recounted plaintiff's self-reporting to him, opined that plaintiff was suffering anxiety and depression as a result of her work-related fall. Plaintiff reported motivational and mood difficulties like sleep difficulties. Dr. Menaker's conclusion was: "She has demonstrated a decrease in her capacity to cope with personal, social, financial, occupational, and familial demands. It is clear that Ms. Francis is suffering from a psychological injury." He diagnosed "adjustment disorder with mixed anxiety and depressed mood" and "pain disorder with related psychological factors." He recommended "coping skills

2

training, cognitive restructuring, relaxation training, and other strategies to manage her symptoms more effectively."[1]

Dr. Menaker's observations of plaintiff during this "snapshot" session were, at most, equivocal on the issue of severity:

> [Plaintiff] was cooperative but agitated and upset throughout the interview. She was also tearful. Mood was sad, depressed, anxious and worried with labile and appropriate affect. She denied any suicidal ideation, intent or plans. Speech was within normal limits. There was no evidence of a thought disorder present. She denied any hallucinations or delusions. She was alert and fully oriented. Attention was distractable. Concentration was intact. Immediate memory was impaired. Recent and remote memory intact. She demonstrated an overall good fund of information and abstract reasoning. Insight and judgment were fair. Impulse control was fair.

None of this, it seems to me, was very helpful to the ALJ in determining the day-to-day degree of psychological impairment from which plaintiff suffers. Plaintiff saw a psychologist for the first time and she was understandably upset about her physical injuries. The ALJ could not draw much more from this description.

As to plaintiff's self-reporting beyond Dr. Menaker, the record contains general statements to her orthopedists that she had anxiety and depression. That is consistent with her testimony.

On this record, I cannot accept plaintiff's argument that the ALJ failed to adequately consider whether plaintiff had a severe mental impairment. First of all, the ALJ's discussion of this issue was very thorough. The ALJ expressly and in detail discussed each of the four broad areas of mental functioning set forth in the Listings as they applied to plaintiff – understanding,

---

[1] Dr. Menaker recommended that plaintiff follow up with him for psychological treatment, but although plaintiff testified at the hearing that she was seeing him once a week, and the ALJ accepted that testimony, there is no indication in the record that she did. This goes to plaintiff's point that the ALJ should have further developed the record, discussed below.

3

remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. Although that analysis pertained to the issue of whether plaintiff met the Listings, it resulted in reasonable findings, supported by the record, that plaintiff had no impairments in the second and fourth areas and mild impairments in the first and third. That is consistent with a non-severe impairment, and it satisfied the ALJ's obligation to consider non-severe impairments.

Second, the ALJ expressly discussed Dr. Menaker's findings and observations, indeed quoting most of them. But as suggested above, those findings and observations shed no light on the severity of plaintiff's mental condition because they did not address plaintiff's degree of impairment or functional limitations as a result of that condition. To say that plaintiff had a "decrease" in her mental ability to cope as a result of her physical injuries, which is all Dr. Menaker said, didn't give the ALJ a clue as to how big of a decrease or how it might affect her functional ability.

In other words, plaintiff has not distinguished between a finding that she has anxiety and depression, as the ALJ found, and plaintiff having *severe* anxiety and depression – and Dr. Menaker didn't make that distinction either. If we start, as I think we must, with the proposition that not every case of anxiety and depression meets the definition of a "severe" impairment – that is, there is no *per se* rule classifying anxiety and depression as a severe impairment – then there is nothing in Dr. Menaker's report that would compel a finding of severity. Without that assistance, plaintiff is relegated in the instant case to simply disagreeing with the ALJ.

In addition, the ALJ cited other factors that led her to conclude that plaintiff's anxiety and depression were not severe. The ALJ noted that in plaintiff's disability application, although she claimed short term memory and distraction problems, she also acknowledged that she can pay

4

bills, count change and handle money; that she can follow spoken and written directions; and that she (paradoxically) does not have trouble remembering things. There were a number of other acknowledgements of normal functional ability and activities of daily living in plaintiff's disability application to which the ALJ referred which also pointed to a non-severe impairment.

Moreover, the ALJ was entitled to rely on plaintiff's disability application. That application asked plaintiff to list "all of the physical or mental conditions that limit your ability to work" – and plaintiff did not list any mental conditions. On top of that, plaintiff didn't even obtain a psychological evaluation until eight months after she filed her disability application, which causes some skepticism as to its severity. Finally, the ALJ also noted that plaintiff is not taking any anxiety medications. That seems somewhat unusual for someone in psychiatric treatment with severe anxiety and depression, as such medications are frequently and effectively used for even low-level manifestations of those conditions.

In sum, although plaintiff complains that the ALJ applied her own judgment to assess the severity of plaintiff's anxiety and depression, what really happened was that the ALJ filled a void. Dr. Menaker's opinion, merely concluding that there was anxiety and depression but offering no help as to whether it was severe, did not do that, and so the ALJ had to. On the record of this case, the ALJ properly recognized that absence of evidence was evidence of absence.

Finally, plaintiff complains that because she testified that she had recently started seeing Dr. Menaker on a weekly basis (see fn. 1 supra), the ALJ should have obtained treatment notes from him. I am not convinced that there are any treatment notes, despite plaintiff's testimony, or at least none that would help her succeed in her claim. I recognize that a claimant's representation by counsel before the ALJ does not absolve the ALJ of his obligation to develop

5

the record, see Perez v. Charter, 77 F.3d 41 (2d Cir. 1996), but the facts of this case do not show any error by the ALJ in that regard for the following reasons.

First, plaintiff was represented by a highly experienced and able disability attorney before the ALJ who certainly knew how to get records that would help her case and the importance of doing so. Second, and of equal import, the ALJ *sua sponte* granted that attorney additional time at the close of the hearing to obtain and submit any additional records, for which counsel expressed appreciation – yet counsel submitted no records from Dr. Menaker, not even at the Appeals Council level. We have to accept the reality that disability lawyers get paid only if their clients get benefits, see 42 U.S.C. § 406; 20 C.F.R. § 404.1728, and thus it was not only in plaintiff's interest but in counsel's own interest to submit additional records from Dr. Menaker if they would have helped her case. In any event, the ALJ's invitation to experienced counsel to submit any additional records, which did not lead to any, was sufficient fulfillment of her obligation to develop the record. See Zabala v. Astrue, 595 F.3d 402, 408 (2d Cir. 2010); Jordan v. Comm'r of Soc. Sec., 142 F. App'x 542, 543 (2d Cir. 2005) (finding that the ALJ fulfilled his duty to develop the record where counsel volunteered to obtain documents from the plaintiff's treating physician and the ALJ kept the record open to allow counsel to submit the documents); DeJesus Gonzalez v. Comm'r of Soc. Sec., No. 16-cv-4612, 2017 WL 1051119, at *4 (E.D.N.Y. March 19, 2017); Brown v. Colvin, No. 14-cv-1784, 2016 WL 2944151, at *3 (D. Conn. May 20, 2016); Alachouzos v. Comm'r of Soc. Sec., No. 11 Civ. 1643, 2012 WL 601428, at *6 (E.D.N.Y. Feb. 23, 2012).

II.   **Assessment of RFC without considering side effects of Percocet**

The ALJ made a general reference to plaintiff's medication regime as "generally effective and without adverse side effects." Plaintiff's medical records from her orthopedist show that, at

least at some point in time, her medication regime included Percocet four times a day,[2] along with other medications. In her disability application, plaintiff noted that she was taking "Flexeril for muscle relaxant/ pain injections/ Alive [sic: should be "Aleve," an NSAID]/ Ibuprofen/ Percocet (only if needed)". As to side effects, she listed constipation and drowsiness. At the hearing before the ALJ, in answer to a question of whether she was taking pain medication, plaintiff said she was, and that the (unnamed) medication was making her drowsy, tired, dizzy, causing muscle spasms to her face, and causing her ears to pop. She further testified that the side effects from the medications were making her stay at home.

In this proceeding, plaintiff points to SSR 96-8p. That requires an ALJ to consider "the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)" in determining RFC. Plaintiff asserts that anyone taking that much Percocet would be off-task or lose concentration some portion of the workday, and the ALJ should have more thoroughly explained why that was not the case with plaintiff, both in assessing RFC and in formulating a hypothetical to the vocational expert.

It would have been preferable for the ALJ to follow up on plaintiff's testimony about side effects, since delving deeper into that testimony would likely have disclosed more about her claim of frequency of taking the medication and severity of the side effects. Nevertheless, I conclude that remand to obtain an expansion on this point would be unlikely to result in a finding of disability.

---

[2] The notation of Percocet four times per day appears in three treatment notes from her orthopedist. The reports are clearly reflective of different appointments, but they are strangely undated, which makes it impossible to tell how long plaintiff was taking Percocet.

First, the ALJ's finding that her medication regime was "without adverse side effects" was consistent with the medical record, which contains no mention whatsoever of the side effects that plaintiff alleged in her testimony. One would think that plaintiff would have mentioned it to either Dr. Menaker or her orthopedists or sought a change in medication if the symptoms to which she testified were causing her that degree of distress. The ALJ found that plaintiff's alleged "symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." Although the ALJ did not specifically reference plaintiff's testimony about side effects as one of those inconsistencies, that testimony fits well within this finding; indeed, plaintiff does not challenge the ALJ's conclusion about inconsistencies.

Second, her orthopedists' notation that she was taking Percocet four times a day probably should not be taken literally. As plaintiff correctly argues, that's an awful lot of Percocet. It is hard to imagine that anyone staying on that high a dose for more than a limited time wouldn't seek other pain remediation therapies or suffer much more pronounced side effects, like opioid addiction. Plaintiff's disability application, in contrast, disclosed that she was taking Percocet only "if needed." This suggests the much more likely possibility that although her prescription authorized her to take it up to four times a day, that was an immediate post-surgical level, and, thereafter, she was in fact taking it, if at all, only when and if her pain became acute.

Finally, SSR 96-8p has to be evaluated in the context of an RFC determination. That determination brings into play the totality of the circumstances – everything that plaintiff can and can't do that might affect her ability to work as reflected in both medical and non-medical evidence. Medication side effects are only one of the many factors that the ALJ should consider in determining RFC. And plaintiff does not complain about the ALJ's RFC determination other

8

than this point about Percocet side effects (and, of course, Dr. Menaker's psychological evaluation described above). The ALJ's decision, read in its entirety, reflects a very thorough discussion of plaintiff's limitations. I conclude that it is unlikely to change based on plaintiff's testimony about medication side effects.

## CONCLUSION

Plaintiff's motion for judgment on the pleadings is denied, and the Commissioner's cross-motion for judgment on the pleadings is granted. The Clerk is directed to enter judgment dismissing this case.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated:  Brooklyn, New York
        July 22, 2021